**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COMMUNITY LEGAL AID SOCIETY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 24-615-SRF |
| ADULT AND PRISON EDUCATION RESOURCES WORKGROUP, et al., | ) ) ) | |
| Defendants. | ) ) | |

---

Richard H. Morse, Marissa L. Band, Victoria Glock-Molloy, Stefanie N. Ramirez, COMMUNITY LEGAL AID SOCIETY, INC., Wilmington, DE; Kathleen L. Millian, Zenia Sanchez Fuentes, Todd A. Gluckman, Michael L. Huang, TERRIS, PRAVLIK & MILLIAN, LLP, Washington, DC.

     Attorneys for Plaintiff.

E. Chaney Hall, Kasey H. DeSantis, FOX ROTHSCHILD LLP, Wilmington, DE.

     Attorneys for Defendants.

---

**MEMORANDUM OPINION**

June 23, 2025
Wilmington, Delaware

**FALLON, U.S. MAGISTRATE JUDGE:**

CLASI filed this action on May 23, 2024, asserting causes of action for declaratory and injunctive relief under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794(a), in addition to various causes of action under Delaware law. (D.I. 1) On June 14, 2024, the parties consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings. (D.I. 28) The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

Presently before the court are the following motions: (1) the motion of plaintiff Community Legal Aid Society, Inc. ("CLASI") for a preliminary injunction, (D.I. 15);[1] and (2) the motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed by defendants Adult Prison Education Resources Workgroup ("APER"), Maureen Whelan, Delaware Department of Education ("DDOE"), and Mark A. Holodick, (D.I. 47).[2] Defendants Delaware Department of Correction ("DDOC") and Terra Taylor (collectively with the foregoing defendants, "Defendants") join in the motion to dismiss. (D.I. 49) The United States filed a Statement of Interest addressing the parties' arguments under the IDEA.[3] (D.I. 54) For the following reasons, CLASI's motion for a preliminary injunction is DENIED and Defendants' motion to dismiss is DENIED.

---

[1] The briefing and other filings associated with the pending motion for a preliminary injunction are found at D.I. 16, D.I. 17, D.I. 30, D.I. 32, D.I. 33, D.I. 34, D.I. 35, D.I. 36, D.I. 37, D.I. 38, D.I. 43, D.I. 44, and D.I. 61.

[2] The briefing and other filings associated with the pending motion to dismiss are found at D.I. 48, D.I. 51, D.I. 52, and D.I. 58.

[3] Defendants' response to the United States's Statement of Interest is found at D.I. 59.

## I.    BACKGROUND

Delaware has designated CLASI as its official "protection and advocacy" ("P&A")

system to protect and advocate for the rights of people with disabilities. (D.I. 1 at ¶ 7)  As a

P&A, CLASI receives federal funds to advocate on behalf of individuals with disabilities and is

responsible for filing lawsuits to ensure their protection. (*Id.*)  In accordance with these

obligations, CLASI filed this action on May 23, 2024, alleging that Defendants have

systemically failed to educate incarcerated students with disabilities as mandated by state and

federal law. (*Id.* at ¶¶ 1-4)  On the same day, CLASI filed the pending motion for a preliminary

injunction. (D.I. 15)  The parties subsequently stipulated to extend the time to respond to the

complaint and the motion for preliminary injunction. (D.I. 23; D.I. 24)  A hearing on the motion

for preliminary injunction was held on September 19, 2024. (D.I. 46)

Defendants filed the pending motion to dismiss on July 18, 2024, asserting a lack of

standing under Rule 12(b)(1) and failure to state a claim upon which relief can be granted under

12(b)(6). (D.I. 47)  As noted by the United States in its Statement of Interest, the motion to

dismiss "largely tracks the arguments advanced in Defendants' Opposition to the Motion for

Preliminary Injunction." (D.I. 54 at 4)  Therefore, the court addresses the motions in a single

decision. This summary of the facts rests on the allegations in the complaint, and only the

allegations in the complaint have been considered for purposes of Defendants' motion to dismiss

for failure to state a claim under Rule 12(b)(6). *See Siwulec v. J.M. Adjustment Servs., LLC*, 465

F. App'x 200, 202 (3d Cir. 2012) ("In resolving a motion to dismiss pursuant to Rule 12(b)(6), a

court generally should consider only the allegations in the complaint," exhibits attached thereto,

and matters incorporated by reference). The court's analysis of the pending motion for

preliminary injunction incorporates citations to and discussion of other evidence presented by the

3

parties. *See Bus Air, LLC v. Woods*, C.A. No. 19-1435-RGA-CJB, 2019 WL 6329046, at *7 (D. Del. Nov. 26, 2019) (describing the evidentiary burden to prevail on a motion for preliminary injunction).

The complaint focuses on the alleged shortcomings of several government agencies and policymakers in providing education services to incarcerated adults with disabilities. The DDOE is tasked with providing education services for the DDOC pursuant to a Memorandum of Understanding ("MOU") between the agencies. (D.I. 1 at ¶¶ 16-18) APER is a division of the DDOE that jointly administers the Prison Education Program with the DDOC. (*Id.* at ¶¶ 11-12)

Defendants must comply with the IDEA, which was enacted "to ensure that all children with disabilities have available to them a free appropriate public education ['FAPE'] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" (*Id.* at ¶ 22) (quoting 20 U.S.C. § 1400(d)(1)). The IDEA's protections extend to disabled students who are up to 22 years old and reside in correctional facilities. (*Id.* at ¶¶ 3, 27) To satisfy the FAPE requirement, Defendants must provide special education and related services at public expense, under public supervision and direction, and without charge in a manner that meets the standards of the DDOE. (*Id.* at ¶ 31) (quoting 20 U.S.C. § 1401(9)). For purposes of this case, a FAPE must include an appropriate secondary school education provided in conformity with the student's individualized education program ("IEP"). (*Id.*)

In this case, CLASI seeks injunctive relief for students who had IEPs at the time they entered DDOC custody. (*Id.* at ¶ 77) The complaint alleges that Defendants have systemically failed to fulfill their obligations to these students for years. (*Id.* at ¶¶ 66-75) The deficiencies include:

4

1. A systemic failure to provide a FAPE, including comparable services, and to timely develop, adopt, and implement an IEP upon transfer to APER, (*id.* at ¶ 77);

2. A systemic failure to thoroughly evaluate students based upon their individual needs, (*id.* at ¶ 78);

3. A systemic failure to craft appropriate IEPs that provide for needed specialized instruction, related services, and supplemental aids and supports, (*id.* at ¶¶ 79-82);

4. A systemic failure to implement IEPs as required and provide needed education and services, (*id.* at ¶¶ 83-90);

5. A systemic failure to provide education in an environment and manner conducive to education, (*id.* at ¶¶ 91-93);

6. A systemic failure to provide education in the least restrictive environment, (*id.* at ¶¶ 94-95);

7. A systemic failure to make manifestation determinations and then take the required follow-up action and the practice of removing special education and related services as punishment, (*id.* at ¶¶ 96-97);

8. A systemic failure to provide timely reevaluations and annual IEP reviews, (*id.* at ¶ 98);

9. A systemic failure to provide the required procedural protections necessary to involve students, their parents, and their counsel in their education and the provision of a FAPE, (*id.* at ¶ 99); and

10. A systemic failure to afford students with disabilities the opportunity to participate in and benefit from education that is designed to meet their needs as adequately as the needs of non-disabled students (*id.* at ¶¶ 100-03).

To illustrate these systemic failures, the complaint focuses on three individuals (identified as "A.A.," "B.B.," and "C.C.")[4] who are housed in the Howard R. Young Correctional Institution ("Young") and the James T. Vaughn Correctional Center ("Vaughn"). (D.I. 1 at ¶¶ 62, 106-233) In the case of A.A., the complaint alleges that APER (i) failed to timely take action to provide him with the needed education and services upon his incarceration, (*id.* at ¶ 108); (ii) did not

---

[4] There is no dispute that B.B. and C.C. were no longer eligible under the IDEA at the time the complaint was filed because both were over 22 years of age. (D.I. 1 at ¶¶ 149, 190; D.I. 48 at 8; D.I. 51 at 15; D.I. 58 at 6)

design A.A.'s IEP to address his specific educational and behavioral needs, (*id.* at ¶¶ 109-24); (iii) did not provide A.A. with education in a group setting, (*id.* at ¶¶ 125-27); (iv) failed to provide A.A. with any meaningful education, sometimes providing only 45 minutes of instruction over the course of a month, (*id.* at ¶¶ 128-31, 134-37); (v) failed to provide A.A. with needed accommodations during the process to obtain his Certificate of Education Attainment ("CEA3") (*id.* at ¶ 132); (vi) failed to perform a timely reevaluation or annual IEP review, (*id.* at ¶ 133); (vii) failed to conduct a functional behavior assessment or develop a behavior support plan to enable his continued education even after he was involved in multiple altercations, (*id.* at ¶ 138); (viii) refused to provide A.A.'s educational records to his counsel or his mother, who acted as his educational representative, (*id.* at ¶¶ 139-40); and (ix) violated procedural protections by excluding A.A. and his mother from educational decision-making meetings, (*id.* at ¶ 141). A DDOE Special Education Due Process Hearing Panel subsequently concluded that A.A. was deprived of 1,892 hours of education and ordered APER to take immediate action to remedy the deficiencies and provide compensatory education benefits. (*Id.* at ¶¶ 142-43) Nonetheless, the pleading alleges that A.A. continues to be denied a FAPE. (*Id.* at ¶ 144)

## II.    DISCUSSION

### A.    Motion for a Preliminary Injunction

"A preliminary injunction is an extraordinary remedy . . . which should be granted only in limited circumstances." *Holland v. Rosen*, 895 F.3d 272, 285 (3d Cir. 2018) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994)). To prevail on a motion for a preliminary injunction, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public

interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As a threshold matter, the movant must satisfy the two "most critical" factors by "demonstrat[ing] that it can win on the merits . . . and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). If the first two factors are satisfied, the "court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* (concluding that, "to require a moving party to prevail on all factors reads out balancing when not all factors favor that party.").

To obtain a preliminary injunction, a plaintiff must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017). Irreparable injury requires a showing of "potential harm which cannot be redressed by a legal or an equitable remedy following a trial," and a "preliminary injunction must be the only way of protecting the plaintiff from harm." *See Siemens USA Holdings Inc. v. Geisenberger*, 17 F.4th 393, 408 (3d Cir. 2021) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992)). The party seeking injunctive relief bears the burden to provide clear evidence of irreparable harm, and arguments paired with conclusory allegations are insufficient to justify an injunction. *See Deluna v. Del. Harness Racing Comm'n*, 2019 WL 5067198, at *4 (D. Del. Oct. 9, 2019) (citing *Winter*, 555 U.S. at 22).

CLASI includes two paragraphs on irreparable harm in its opening brief. (D.I. 16 at 18-19) The first paragraph discusses the need for equitable injunctive relief as opposed to monetary compensation. (*Id.* at 18) The second paragraph concludes summarily that incarcerated students with disabilities will suffer harm in the absence of court-ordered relief. (*Id.* at 19) The focus of

7

the parties' dispute is on this second point, as Defendants contend that the scope of relief sought by CLASI goes beyond a preservation of the status quo and instead mirrors the final relief sought in the litigation.  (D.I. 32 at 17-19)

The scope of CLASI's proposed preliminary injunction is overbroad.  *See V. W. v. Conway*, 236 F. Supp. 3d 554, 581 (N.D.N.Y. 2017) (explaining that "preliminary injunctive relief in any civil action with respect to prison conditions must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct that harm.").  The proposed form of order includes detailed compliance requirements, the submission of regular status reports with supporting documentation, and frequent and ongoing compliance assessments by the court.  (D.I. 15-1)  CLASI stresses that the requested relief is systemic in nature and would not require assessment of individual cases.  (D.I. 43 at 9-10)  But the text of CLASI's proposed preliminary injunction does not support this assertion and instead requires compliance and oversight on a student-by-student level based on the individualized IEPs.  For example, the proposed order mandates the timely evaluation of each qualifying student entering Young or Vaughn, the development of IEPs based on individualized determinations for each student, and reporting requirements outlining the specific number of hours of each service being provided to each student.  (D.I. 15-1)

CLASI cites several cases in support of its position that courts have granted preliminary injunctions of similar scope in the context of alleged IDEA violations, but none of those cases supports the entry of a preliminary injunction as broad as the one CLASI proposes.  (D.I. 61)  For example, in *A.T. v. Harder* and *V.W. v. Conway*, the injunctive relief awarded by the court primarily placed limitations on the defendants' imposition of disciplinary isolation on juveniles.  *A.T. v. Harder*, 298 F. Supp. 3d 391, 418 (N.D.N.Y. 2018); *V.W.*, 236 F. Supp. 3d at 590.

Preliminary relief directly relating to the juveniles' educational services was limited to the provision of IDEA-mandated special education and related services, consistent with the law, and the courts did not impose any reporting or monitoring requirements. *Id.* In *Green v. Johnson*, the court imposed a one-time reporting requirement providing for a summary of the defendants' progress, with the option of including supporting affidavits. 513 F. Supp. 965, 978 (D. Mass. 1981). In *Charles H. v. District of Columbia*, the court imposed a 30-day reporting requirement on the implementation of special education and related services for class members, but the preliminary injunction did not dictate when or how the IEPs should be developed, and the focus of the order was on reinstating in-person instruction following pandemic restrictions. (D.I. 44, Ex. 28; 9/19/2024 Tr. at 28:4-13)

CLASI has not met its burden to show why each of the sweeping measures in the proposed preliminary injunction is necessary to prevent irreparable harm at this early stage of the litigation.[5] Defendants correctly note that, "[w]here the relief ordered by the preliminary injunction is mandatory and will alter the *status quo*, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." (D.I. 32 at 17) (quoting *Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008)). In *V.W. v. Conway*, the court confirmed that this heightened standard applies to a preliminary injunction seeking systemic relief for IDEA violations because "the movant is not seeking to restore the *status quo ante* but rather requesting an order that commands an

---

[5] CLASI asks the court to apply a presumption that "[f]ailure to provide a FAPE constitutes irreparable injury." (D.I. 16 at 18) (quoting *R.S. v. Lower Merion Sch. Dist.*, 2023 WL 2228972, at *7 (E.D. Pa. Feb. 24, 2023)). More recently, the Third Circuit has cautioned against such an approach, holding that "[p]resuming irreparable harm is the exception, not the rule." *Del. State Sportsmen's Assoc.*, 108 F.4th at 203. The Third Circuit explained that applying a presumption to the irreparable harm analysis lifts the burden to prove irreparable injury from the party seeking to impose the injunction. *Id.*

affirmative act or mandates a specific course of conduct[.]'" 236 F. Supp. 3d at 581. CLASI has not satisfied its heightened burden here.

CLASI contends that the systemic nature of Defendants' violations will result in ongoing harm during the pendency of this action, but this argument goes to the ultimate merits of the case. (D.I. 16 at 19) CLASI's complaint identifies alleged failures dating back to 1989, and any preliminary injunctive relief would be of no benefit to the three representative students described in the pleading because they are no longer eligible under the IDEA due to their age.[6] (D.I. 1 at ¶¶ 66-75, 106, 149, 190) The possibility that a preliminary injunction could prevent ongoing harm is not enough. *Del. State Sportsmen's Assoc., Inc. v. Del. Dept. of Safety & Homeland Sec.*, 108 F.4th 194, 201 (3d Cir. 2024) (stating that "[c]ourts have strayed from the primary purpose of preliminary injunctions and instead started to use them just to prevent harm."). The Third Circuit has cautioned that "the function of the court is *not* to take whatever steps are necessary to prevent irreparable harm" before there has been a trial on the merits. *Id.* at 200.

In *Delaware State Sportsmen's Association*, the Third Circuit advised that "[a] preliminary injunction is not a first bite at the merits. Rather, it is an extraordinary, equitable remedy designed to protect the court's ability to see the case through. It risks cementing hasty first impressions." *Id.* at 206 (rejecting the position that, "if a plaintiff will likely succeed on the merits . . . a court *must* grant a preliminary injunction."). The entry of CLASI's proposed preliminary injunction would contravene the Third Circuit's admonition. A comparison between CLASI's proposed preliminary injunction and the systemic violations described in the complaint supports Defendants' position that CLASI seeks a shortcut to the ultimate merits of the case by

---

[6] Although CLASI maintains that it seeks a remedy for systemic violations, it relied on evidence of individual student cases to justify the entry of a preliminary injunction. (9/19/2024 Tr. at 30:17-31:13)

moving for preliminary injunctive relief. (*Compare* D.I. 1 at ¶¶ 77-103 *with* D.I. 15-1)  The prayer for relief in CLASI's pleading also fails to distinguish between the scope of the preliminary and final remedy, requesting "[a] preliminary and permanent injunction ordering Defendants to develop and implement adequate and effective policies and procedures to provide FAPE to all eligible students[.]"  (D.I. 1 at ¶ 276(b))  CLASI has "shown no harms beyond ones that can be cured after final judgment." *Del. State Sportsmen's Assoc.*, 108 F.4th at 205 (explaining that this "finding alone suffices to support . . . denial of a preliminary injunction."); *see also Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (stating that the "purpose of such interim equitable relief is not to conclusively determine the rights of the parties.").  The court declines to impose extensive preliminary injunctive relief without the benefit of fact and expert discovery.

CLASI does not directly address Defendants' position that the proposed preliminary injunction would require the court to step into the shoes of the DDOE by reviewing monthly status reports and accompanying documentation to verify compliance with the statutory requirements, amounting to an end-run around the students' administrative remedies.  (D.I. 32 at 18)  In *V.W.*, a case cited by CLASI, the court cautioned against imposing injunctive relief that would "immerse the federal judiciary in the management of [ ] prisons." *V.W.*, 236 F. Supp. 3d at 581 (quoting *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997)).  CLASI's proposed preliminary injunctive relief would do just that, before the court has the benefit of relevant information obtained through discovery and before full consideration of the existing corrective action plan implemented by the DDOE and APER.

For the foregoing reasons, and in the exercise of its discretion, the court concludes that CLASI has not met its heightened burden to show irreparable harm. *Del. State Sportsmen's*

11

*Assoc.*, 108 F.4th at 202 (stating that the entry of a preliminary injunction "is a matter of equitable discretion" and "an extraordinary remedy never awarded as of right.") (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24, 32 (2008)). Having determined that CLASI has not demonstrated irreparable harm, the court need not address the remaining preliminary injunction factors pertaining to the likelihood of success on the merits, the balancing of equities, and the public interest. *See Del. State Sportsmen's Assoc.*, 108 F.4th at 203 ("Though not all four factors weigh heavily in every case, any one factor may give a district court reason enough to exercise its sound discretion by denying an injunction."); *Doehler N. Am., Inc. v. Davis*, C.A. No. 22-501-RGA, 2022 WL 2785969, at *5 (D. Del. July 15, 2022) ("Because the irreparable harm element is dispositive for this motion, the Court need not consider the other elements."). Consequently, CLASI's motion for a preliminary injunction is DENIED.

### B.   Motion to Dismiss

Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Constitutional standing "is properly tested under Rule 12(b)(1)" and "may be challenged facially or factually." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020). "A facial challenge argues that the plaintiff's factual allegations cannot meet the elements of standing." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d at 885 (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). A factual attack contests the sufficiency of jurisdictional facts. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). When reviewing a factual attack, the court may weigh and consider evidence outside the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). For a facial challenge, the court applies the same standard that governs a Rule 12(b)(6) motion for failure to state a claim, accepting the

plaintiff's well-pleaded factual allegations as true and drawing all reasonable inferences

allegations in favor of the plaintiff. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,

846 F.3d 625, 633 (3d Cir. 2017).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint

must contain a "short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the

complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft

v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations

allow the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail,"

but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat

Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks

omitted). This "does not impose a probability requirement at the pleading stage," but instead

"simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir.

2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task

requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at

663-64.

### 1. Defendants' motion to dismiss under Rule 12(b)(1) is DENIED.

Defendants first contend that CLASI is not likely to prevail on the merits in this action

because there is no statutory basis for CLASI's standing under the Developmental Disabilities

Assistance and Bill of Rights Act, 42 U.S.C. § 15001 *et seq.* (the "DD Act"), which does not

authorize a P&A to bring an action in its own name. (D.I. 48 at 5-7)  Defendants also argue that

PAIMI and the PAIR Act only authorize CLASI to bring claims on behalf of individuals seeking

individualized relief.  (*Id.*)  As CLASI explains, however, numerous cases within the Third

Circuit have held that a P&A has representational standing to bring an action on behalf of people

with disabilities.  (D.I. 51 at 13-14) (citing *N.J. Prot. & Advoc. v. N.J. Dep't of Educ.*, 563 F.

Supp. 2d 474, 482-84 (D.N.J. 2008); *Disability Rights Pa. v. Pa. Dep't of Hum. Servs.*, 2020 WL

1491186, at *6 (M.D. Pa. Mar. 27, 2020) (agreeing that the plaintiff's status as a P&A system

under the DD Act and PAIMI Act establishes standing); *CLASI v. Coupe*, C.A. No. 15-688-

GMS, 2016 WL 1055741, at *2-3 (D. Del. Mar. 16, 2016)).

     As Delaware's P&A, CLASI has standing to bring litigation to address systemic

problems in the education of people with disabilities at least under PAIMI.  42 U.S.C.

§ 10805(a)(1)(B).  Section 10805(a)(1)(B) provides that a P&A has the authority to "pursue

administrative, legal, and other appropriate remedies to ensure the protection of individuals with

mental illness who are receiving care or treatment in the State[.]"  *Id.*  Courts have construed this

provision to support a P&A's standing to pursue claims for system-wide change on behalf of

identifiable groups of similarly situated constituents. *Dunn v. Dunn*, 219 F. Supp. 3d 1163,

1166-67 (M.D. Ala. 2016) (citing cases).  In contrast, Section 10805(a)(1)(C) permits a P&A to

"pursue administrative, legal, and other remedies on behalf of an individual[.]"  42 U.S.C.

§ 10805(a)(1)(C).  "[I]f Congress merely intended for state systems to act as advocates on behalf

of mentally [ill] individuals, it would not have included (a)(1)(B) in the statute in addition to

(a)(1)(C)." *Brown v. Stone*, 66 F. Supp. 2d 412, 425 (E.D.N.Y. 1999) (quoting *Trautz v.*

*Weisman*, 846 F. Supp. 1160, 1163 (S.D.N.Y. 1994)).

Defendants also argue that CLASI lacks both associational and organizational standing. (D.I. 48 at 5-11)  CLASI has met its burden to establish associational standing. *See Am. Fed. of Gov't Employees Local 2018 v. Biden*, 598 F. Supp. 3d 241, 246 (E.D. Pa. 2022) (explaining that an organizational plaintiff "must . . . name at least one member who has standing and present specific facts through affidavits or other evidence which support standing."). Because CLASI has associational standing, the court need not reach the issue of whether it has organizational standing.

"[A]ssociational standing recognizes that 'the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others.'" *N.J. P&A, Inc.*, 563 F. Supp. 2d at 482 (quoting *Pa. Psych. Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002)). An entity has associational standing on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "The first two requirements are constitutional, while the third is 'prudential' and can be abrogated by statute." *Cmty. Legal Aid Soc'y, Inc. v. Coupe*, C.A. No. 15-688-GMS, 2016 WL 1055741, at *2 (D. Del. Mar. 16, 2016). The parties dispute the first and third *Hunt* factors.

Defendants contend that CLASI cannot establish associational standing under the first *Hunt* factor because none of the three individual constituents identified in the complaint has standing to sue in his own right. (D.I. 48 at 8)  There is no dispute that B.B. and C.C. were no longer eligible under the IDEA at the time the complaint was filed because both were over 22 years of age. (D.I. 1 at ¶¶ 149, 190; D.I. 48 at 8; D.I. 51 at 15; D.I. 58 at 6)  Defendants maintain

15

that A.A. also lacks standing under the IDEA because he was born in 2002 and therefore may also be over 22 years of age. (D.I. 48 at 8; D.I. 1 at ¶ 106) CLASI acknowledges that, while A.A. is no longer eligible under the IDEA, he was eligible at the time the complaint was filed in May of 2024. (D.I. 51 at 15; D.I. 52, Ex. 30 at ¶¶ 19-20) The first *Hunt* factor is satisfied because standing is determined based on the factual record at the time the complaint is filed, and A.A. met the statutory age requirements under the IDEA when the complaint was filed on May 23, 2024. *See Soto v. Hensler*, 235 F. Supp. 3d 607, 622 (D. Del. 2017) ("To achieve standing, a plaintiff must satisfy the case and controversy requirements of Article III at the time the complaint is filed[.]").

Defendants further contend that CLASI has not established a concrete and particularized injury-in-fact to establish standing for any of the individuals identified by CLASI. (D.I. 48 at 8-9) Defendants' argument is not persuasive. For example, the complaint alleges that A.A. suffered tangible injuries due to Defendants' failure to provide him with a FAPE, stating that A.A.'s IEP was not designed to meet his educational needs, it included no supports to address his behavioral or mental health needs, and it provided only self-study with no group instructional settings, among other deficiencies. (D.I. 1 at ¶¶ 106-41) As a result of these alleged deficiencies, the complaint avers that A.A. was deprived of 1,892 hours of education and continues to suffer lost educational opportunities. (*Id.* at ¶¶ 143-44) These allegations are sufficient to support an injury-in-fact for purposes of individual standing under the first *Hunt* factor. *See N.J. Prot. & Advoc.*, 563 F. Supp. 2d at 482-83 ("At the pleading stage, general factual allegations of injury resulting from the [D]efendant[s'] conduct may suffice, for on a motion to dismiss, we presume that general allegations embrace those specific facts that are

necessary to support the claim.") (quoting *N.J. Prot. & Advoc. v. Davy*, 2005 WL 2416962, at *3 (D.N.J. Sept. 30, 2005)).

CLASI contends that the third *Hunt* requirement is abrogated by Congress's designation of CLASI as a P&A system with the statutory authority to bring claims under the PAIMI Act. (D.I. 16 at 14-15)  Although the Third Circuit has not directly addressed the issue, cases from this district and other circuits support CLASI's position that the third *Hunt* requirement is not applicable in this case because of the role Congress assigned under PAIMI to P&As like CLASI. *See CLASI v. Coupe*, 2016 WL 1055741, at *2; *see also Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1113 (9th Cir. 2003) (citing *United Food & Com. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 548-49 (1996)); *Doe v. Stincer*, 175 F.3d 879, 883 (11th Cir. 1999).  The court finds this authority persuasive and concludes that the third *Hunt* requirement in this case is abrogated due to CLASI's statutory authority to bring claims on behalf of its constituents.

Even if the third *Hunt* requirement is not abrogated, CLASI satisfies the requirement because it seeks systemic declaratory and injunctive relief, as opposed to individualized relief requiring the participation of individual students. *See N.J. Prot. & Advoc.*, 563 F. Supp. 2d at 483 ("[I]ndividual member participation is not normally necessary when the organizational plaintiff seeks prospective or injunctive relief on behalf of its members.").  Defendants contend that an individualized assessment is nonetheless necessary to monitor and enforce any injunctive relief awarded to CLASI.  (D.I. 58 at 7)  But CLASI seeks systemic relief focused on developing and implementing adequate policies and procedures to provide a FAPE to all eligible students and ensuring that those students are provided a FAPE.  (D.I. 1 at ¶ 276(b))  To the extent that compliance with the requested relief would require monitoring of individualized cases, "some

17

limited participation by the individual members of the organization does not bar associational or representational standing under this third element." *N.J. Prot. & Advoc.*, 563 F. Supp. 2d at 483.

Defendants ask the court to apply the First Circuit's decision *PPAL v. City of Springfield, Massachusetts*, which held that a P&A lacked associational standing because the vast majority of the plaintiff's constituents had failed to exhaust their administrative remedies and adjudication of the claims would be highly individualized. (D.I. 48 at 9) (citing *PPAL v. City of Springfield*, 934 F.3d 13, 34-35 (1st Cir. 2019)). In *PPAL*, the court determined that individualized assessments were required because there was no evidence that student placements were made using a common method, such as boilerplate IEPs, "that would suggest a common mode of exercising discretion." *PPAL*, 934 F.3d at 30 (internal quotation marks and citations omitted). Here, in contrast, the complaint quotes the administrative hearing panel decision finding that Defendants' IEPs used "boilerplate, cut-and-paste, or generic language" instead of reflecting a student's subjective educational needs. (D.I. 1 at ¶ 164) CLASI seeks systemic changes to Defendants' policies and procedures to redress common practices that result in the denial of a FAPE for incarcerated students with disabilities. (*Id.* at ¶ 276)

Next, Defendants argue that the court lacks subject matter jurisdiction over CLASI's claims because CLASI failed to exhaust its administrative remedies. (D.I. 48 at 11-15) But the Third Circuit has held that exhaustion is not required under the IDEA when a plaintiff "allege[s] systemic legal deficiencies and, correspondingly, request[s] system-wide relief that cannot be provided (or even addressed) through the administrative process." *T.R. v. Sch. Dist. of Phila.*, 4 F.4th 179, 185 (3d Cir. 2021) (quoting *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996)). The administrative exhaustion requirement is excused "where: (1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative

agency cannot grant relief; [or] (4) exhaustion would cause severe or irreparable harm." *Id.*
(quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 275 (3d Cir. 2014)). The "systemic
exception" to the exhaustion requirement "merely flows implicitly from, or is in fact subsumed
by, the futility and no-administrative-relief exceptions." *Id.*

Defendants allege that CLASI has failed to identify any deficiencies in specific policies
for purposes of the systemic exception. (D.I. 48 at 13) But CLASI and the United States
contend that "deficient procedures and practices, like deficient policies, can constitute a systemic
violation of the law" when they threaten the IDEA's goal of providing all eligible students with a
FAPE. (D.I. 43 at 6-7; D.I. 51 at 5-6; D.I. 54 at 9) The alleged procedures and practices, such as
the failure to timely develop and implement IEPs and provide related services, amount to
systemic implementation failures. (*See, e.g.*, D.I. 1 at ¶¶ 77-90) Courts have held that the
exhaustion requirement is excused when the alleged wrongdoing is inherent in the program, as
demonstrated by the failure to evaluate and place students and the failure to develop IEPs. *J.S.
ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 113-14 (2d Cir. 2004) (citing cases). In these
circumstances, the systemic relief required to remedy the implementation failures exceeds the
relief available through administrative hearings. *Id.*

Defendants also contend that the systemic exception cannot apply in this case because the
three individual students described in the complaint exhausted their administrative remedies, and
CLASI does not allege that their access to the administrative forum was hindered. (D.I. 48 at 12-
13) Consequently, Defendants reason that all other incarcerated students with disabilities may
pursue relief in the administrative forum. (*Id.* at 13) But the deprivation of access to an
administrative forum is not the only time the systemic exception may be invoked. *Cf. Carmona
v. N.J. Dep't of Educ.*, 2023 WL 5814677, at *4 (3d Cir. Sept. 8, 2023). Rather, the systemic

exception applies when a defendant's failures are "widespread and systemic," affecting all disabled students regardless of each student's individual circumstances or educational needs. *DL v. D.C.*, 450 F. Supp. 2d 11, 18 (D.D.C. 2006).

The systemic nature of the deficiencies in Defendants' program is illustrated by the complaint's averment that, even after A.A. was granted administrative relief, APER did not comply with the administrative decision and A.A. continued to be denied a FAPE. (D.I. 1 at ¶ 144) Even if the individual students described in the complaint received some administrative remedies, it does not follow that every student subject to a systemically deficient program should be required to bring individual administrative claims. *DL v. D.C.*, 860 F.3d 713, 731 (D.C. Cir. 2017) ("[G]iven the district court's finding that the District has failed, year after year, to comply with [IDEA], we have no doubt that the statute's remedial provision . . . vests the court with all the authority it needs to remedy those violations through injunctive relief."). For these reasons, CLASI's failure to comply with the administrative exhaustion requirement is excused under the systemic exception.

## 2. Defendant's motion to dismiss under Rule 12(b)(6) is DENIED.

Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) is also denied. The complaint plausibly identifies systemic deficiencies in the education and services provided to incarcerated students with disabilities, and Defendants do not meaningfully challenge the sufficiency of those allegations. (D.I. 1 at ¶¶ 69-72, 79-81, 110, 113-19, 131, 142, 147, 157, 160, 164, 199, 211-12, 235, 247-63) Instead, Defendants contend that the experiences of the three individuals described in the complaint cannot state a plausible claim for systemic relief. (D.I. 48 at 16) Defendants also argue that the complaint's allegations regarding one unnamed APER policy do not plausibly establish a claim for relief. (*Id.* at 17-20)

The complaint contains plausible allegations illustrating the history of Defendants' systemic failure to provide adequate education to incarcerated students with disabilities and identifying ongoing practices that remain deficient. (D.I. 1 at ¶¶ 66-103)  More specific averments regarding three individual students supplement those broad allegations.  The complaint plausibly alleges that the systemic violations adversely impact all eligible students under the IDEA.  (*Id.*)

CLASI's reliance on a single policy document from 2013 is also not fatal to its claims. Without citing any case authority, Defendants contend that CLASI's claims fail because the policy identified in the complaint is out of date and was not included in the record before the court. (D.I. 58 at 1, 3-4)  Defendants also allege that the complaint mischaracterizes portions of the policy. (D.I. 48 at 17)  The policy in question was not attached to the complaint or included with Defendants' briefing on the motion to dismiss.  Therefore, the court must accept as true the pleaded averments regarding the contents of the policy.  The issues raised by Defendants are factual disputes that are not properly addressed on a motion to dismiss for failure to state a claim.

Accepting the averments about Defendants' policy as true at this stage of the proceeding, the court concludes that the complaint states a plausible claim for relief under the IDEA and Delaware law.  For example, the complaint quotes Defendants' policy as stating that "related services are not offered at [Prison Adult Education Program]," and the DDOC "provides for medication for behavior and counseling, and out of institution psychiatric care." (D.I. 1 at ¶ 235(d))  Defendants suggest this policy is consistent with the DDOC's statutory duties. (D.I. 48 at 17-18)  But the complaint specifically states that "related services," which are defined in the IDEA, are a component of a FAPE, and the DDOE and APER are therefore responsible for

21

providing related services. (D.I. 1 at ¶¶ 31, 33, 37(b)) (quoting 20 U.S.C. §§ 1401(9), 1401(26)(A), 1413(g)(1)).

When Defendants' policy "states that 'related services are not offered at PAEP,'" this plausibly suggests that the DDOE and APER are not fulfilling their responsibilities to provide related services. (*Id.* at ¶ 235(d)) Although the policy indicates that the DDOC provides medication for behavior and psychiatric care, these services do not fall within the complaint's definition of "related services," which include "such developmental, corrective, and other supportive services[.]" (*Id.* at ¶¶ 37(b), 235(d)) These collective averments, taken as true, state a plausible claim for a violation of the IDEA. Consequently, Defendants' motion to dismiss is DENIED with respect to CLASI's causes of action for violations of the IDEA and Delaware law.

Defendants provide only a cursory argument that they do not systemically violate the Rehabilitation Act or the ADA, citing authority in support of their position that "a finding that a student received a FAPE under the IDEA 'is equally dispositive' of a plaintiff's § 504 claim" under the Rehabilitation Act. (D.I. 48 at 20); *Jalen Z. v. Sch. Dist. of Philadelphia*, 104 F. Supp. 3d 660, 683 (E.D. Pa. 2015) (quoting *D.K. v. Abington Sc. Dist.*, 696 F.3d 233, 253 n.8 (3d Cir. 2012)). For the reasons previously stated, CLASI states a plausible claim for violations of the IDEA. That analysis applies equally to CLASI's claims brought under the Rehabilitation Act and the ADA. *See C.G. v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) (explaining that the failure to provide a FAPE violates the IDEA, the ADA, and the Rehabilitation Act "because it deprives disabled students of a benefit that non-disabled students receive simply by attending school in the normal course[.]"); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014) (confirming that "the substantive standards for determining liability under the

Rehabilitation Act and the ADA are the same.") (internal quotation marks and citations omitted). Consequently, Defendants' motion to dismiss for failure to state a claim is DENIED.

## III.    CONCLUSION

For the foregoing reasons, CLASI's motion for a preliminary injunction is DENIED, (D.I. 15), and Defendants' motion to dismiss is DENIED, (D.I. 47). An appropriate Order consistent with this Memorandum Opinion shall issue.

.